IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN J. GARRIS
    *Plaintiff,*

v.                                      Civil Action No.: ELH-11-602

MARTIN'S FOOD MARKET
    *Defendant.*

**MEMORANDUM OPINION**

John J. Garris, *pro se,* has filed suit against "Martin's Food Market, Etc." ("Martin's"),[1] claiming that he was the victim of racial discrimination committed by the defendant in connection with his attempt to purchase baby food at Martin's using vouchers issued pursuant to the Women, Infants, and Children ("WIC") program.[2] *See* Complaint ("Compl.," ECF 1). Martin's has filed a Motion to Dismiss ("Mot. Dismiss," ECF 5), which Mr. Garris opposes. *See* Plaintiff's Response and Opposition to Defendant's Motion to Dismiss ("Mot. Dismiss Opp'n," ECF 10). In addition, Mr. Garris has filed a Motion to Amend Complaint ("Mot. Amend.," ECF 9), which Martin's opposes. *See* Opposition to Motion to Amend Complaint ("Mot. Amend. Opp'n," ECF 12). The issues have been briefed and the Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

---

[1] The defendant has identified itself as "Giant Food Stores, LLC, d/b/a Martin's Food Market."

[2] WIC was established by 42 U.S.C. § 1786. It "is a Federal grant program" that "serves low-income pregnant, postpartum and breastfeeding women, and infants and children up to age 5 who are at nutrition risk," by providing "nutritious foods, nutrition education, and referrals to health and other social services to participants at no charge." U.S. DEP'T AGRIC., NUTRITION PROGRAM FACTS: FOOD AND NUTRITION SERVICE 1 (2009), http://www.fns.usda.gov/wic/WIC-Fact-Sheet.pdf.

**Factual and Procedural Background**

According to the Complaint, Mr. Garris is African American and his wife, Debra Garris, is Caucasian. Mr. Garris avers that he and his wife were "discriminated against," and that their "civil rights were violated," as a result of an incident that occurred on January 18, 2011, when they went to Martin's to purchase baby food for their infant son using WIC vouchers. Compl.; Mot. Dismiss Opp'n 1. At that time, the store's supervisor, "Pat George," informed Mr. Garris and his wife that they "could not obtain the various items because the store had not put their WIC labels on the shelves." Compl. According to plaintiff, "the items" that they sought to purchase were "WIC approved items." *Id.* Mr. and Ms. Garris asked to speak with the store manager, "Patrick M.," but they "were refused." *Id.* Further, Mr. Garris avers that they were unable to use their WIC vouchers until February 16, 2011. *Id.*

This suit followed. Plaintiff has not explicitly identified the statute under which he is proceeding with respect to his claim that his civil rights were violated. However, the Court shall construe the Complaint as asserting claims arising from defendant's alleged discrimination in making contracts, and in regard to buying personal property, in violation of 42 U.S.C. §§ 1981 and 1982, respectively.[3]

"Both §§ 1981 and 1982 derive their operative language from the first section of the Civil Rights Act of 1866. Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996); *see also McCrary v. Runyon*, 515 F.2d 1082, 1087 (4th Cir. 1975) ("The Supreme Court expressly noticed the relation between § 1981 and § 1982, their common derivation from § 1 of

---

[3] Complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *See, e.g., Huff v. U.S. Dep't of the Army*, 508 F. Supp. 2d 459 (D. Md. 2007); *Cox v. Astrue*, No. CCB-10-581, 2010 U.S. Dist. LEXIS 55593 (D. Md. June 7, 2010).

the Civil Rights Act of 1866 and the necessity of according them similar interpretation.").

Section 1981 provides, *inter alia*, a basis for "[d]iscrimination claims involving retail transactions." *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 734 (D. Md. 2001). Section 1981(a) provides, in part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

In 1991, Congress added subsection (b). It provides: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

To state a § 1981 claim, the plaintiff must show that "he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Id.* at 734. Thus, "[t]o prove a § 1981 claim . . . a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).

Section 1982 broadly prohibits racial discrimination with regard to property rights. It provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

A plaintiff alleging a § 1982 claim "must demonstrate that the defendants' conduct impaired their property interests." *Southend Neighborhood Improvement Ass'n v. Cnty. of St.*

*Clair*, 743 F.2d 1207, 1211 (7th Cir. 1984). Indeed, "just as the initial inquiry under [§] 1981 is on the connection between the [defendant's] actions and the [plaintiff's] ability to contract," *id.*, the "threshold inquiry under § 1982 must focus on the relationship between the [alleged wrongful activity] and the property interest of the [plaintiff]." *City of Memphis v. Greene*, 451 U.S. 100, 123 (1981).

**Discussion**

I. Motion to Dismiss

Martin's has moved to dismiss the Complaint pursuant to Rule "12(b)." In its view, Mr. Garris lacks standing to pursue his claims because participation under WIC is limited to "pregnant, postpartum, and breastfeeding women, infants, and children from low-income families who are determined by a competent professional authority to be at nutritional risk." Memorandum in Support of Defendant's Motion to Dismiss ("Mot. Dismiss Memo.," ECF 5-1) 1-2 (quoting 42 U.S.C. § 1786(d)(1)). Given that plaintiff is an adult male, Martin's argues that "he has no rights under the WIC program as a matter of law," and that "he has no standing to assert a claim that his rights were violated by defendant by its refusal to allow certain items to be purchased using a WIC voucher." *Id.* at 2.

Plaintiff counters that men are eligible for benefits under the WIC program as secondary recipients. Moreover, he explains that he has challenged as discriminatory both Martin's "store-wide policies" of "singling out . . . certain brands and products" for use of WIC vouchers, as well as the application of those policies by store officials. Mot. Dismiss Opp'n 2. In his view, Martin's labeling of items as eligible for purchase with WIC vouchers "singl[es] out . . . certain brands and products," which is discriminatory. *Id.* Further, he argues that, "even if Plaintiffs[4]

---

[4] In his Opposition, Mr. Garris frequently refers to "plaintiffs." Presumably, he regards himself and his wife as plaintiffs, although Ms. Garris is not currently joined as a plaintiff. As

- 4 -

were to forgo [sic] their broader challenge to the store-wide policies or customs that authorize the violations of the WIC Program, the facts would still be relevant to Plaintiffs [sic] discrimination claim." *Id.* at 3.

In its reply, Martin's vigorously contests plaintiff's allegations of racial discrimination, characterizing them as "frivolous." *See* Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Mot. Dismiss Reply," ECF 11). Essentially, Martin's avers that a computer error led to plaintiff's inability to purchase WIC-eligible items on the date in question, but that racial animus played no part in the incident. *Id.* at 2.

A.

"Standing . . . is a fundamental component of a court's subject-matter jurisdiction." *Falwell v. City of Lynchburg, Va.*, 198 F. Supp. 2d 765, 771 (W.D. Va. 2002); *accord Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 994 (D. Md. 2002) (standing is "at the heart of federal subject matter jurisdiction"). As the Fourth Circuit has explained, "the doctrine of standing identifies disputes appropriate for judicial resolution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Put another way, standing ensures that "the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001).

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). A defendant "may aptly challenge [the] existence [of standing] by a motion to dismiss for lack of jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Miller*, 224 F. Supp. 2d at 994.

---

(...footnote continued)

discussed, *infra*, Mr. Garris seeks to amend his Complaint by substituting Ms. Garris as the plaintiff.

"There are two ways" in which a defendant may present a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Buchanan*, 125 F. Supp. 2d at 736. A defendant "may either contend (1) that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or (2) that the jurisdictional facts alleged in the complaint are untrue." *Id.* (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

When, as here, the defendant asserts the first argument, then "the court will view the motion as it would one brought under 12(b)(6)." *Id.* That is, the Court must "accept the well-pled allegations of the complaint as true," and "construe . . . facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."[5] *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see Boss v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). If the defendant asserts the second argument, then "a district court may hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999). However, when an attack on the facts alleging subject matter jurisdiction is intertwined with the merits of a dispute, "it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits." *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434, 440 (D. Md. 2005). Accordingly, to the extent that

---

[5] In analyzing a motion under Rule 12(b)(6), the Court also considers Fed. R. Civ. P. 8(a)(2), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy the minimal requirements of Rule 8(a)(2), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009); *see also Simmons v. United Mort. & Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andre v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

The purpose of Rule 8 (a)(2) is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Twombly,* 550 U.S. at 555-56 n.3 (citation omitted). Thus, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556.

defendant's Reply contests the allegations of discrimination, that factual dispute cannot be resolved at this time.

B.

The doctrine of standing is composed of two "strands": Article III standing and prudential standing. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11. Article III standing "enforces the Constitution's case–or–controversy requirement." *Id.* In order to satisfy the Article III standing requirement, a plaintiff must show: (1) that he has suffered a "concrete and particularized" "injury-in-fact" that affects him "in a personal and individual way"; (2) that a causal connection exists "between the injury and the conduct complained of"; and (3) that it is likely that a favorable adjudication would redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 & n.1 (1992).

In contrast to Article III standing, prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12 (citation omitted). It "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth*, *supra*, 422 U.S. at 509; *accord Elk Grove Unified Sch. Dist.*, 542 U.S. at 12. "Courts impose prudential standing requirements to 'add to the constitutional minima a healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the claim not be an abstract, generalized grievance that the courts are neither well equipped nor well advised to adjudicate.'" *Buchanan*, *supra*, 125 F. Supp. 2d at 738 (citation omitted). Indeed, "[p]rudential considerations preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be vindicated, and access to the federal courts should be limited to those litigants best suited to assert the claims.'" *Id.*

Notably, "the source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing." *Warth*, 422 U.S. at 500. "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.*[6]

The doctrine of prudential standing is apposite here. In effect, Martin's argues that Mr. Garris is attempting to assert "the rights or legal interests of others," to wit, Ms. Garris, their son, or women and children who ordinarily are the ones to participate in the WIC program.

Administration of the WIC Program is delegated to state agencies. *See* 7 Code of Federal Regulations ("C.F.R."), § 246.3(b). In Maryland, administration of the WIC Program is codified in the Code of Maryland Regulations ("COMAR"). COMAR 10.54.01.04.B(26) defines a "[p]articipant" in the WIC program as "a pregnant woman, breastfeeding woman, postpartum woman, infant, or child who is receiving supplemental foods or food instruments under the Program, and the breastfed infant of a breastfeeding woman participant." COMAR 10.54.01.18, titled "**Receipt of Benefits**," provides for the receipt of a "[s]ignature verification card" and "WIC identification folder" by the "participant or the child or infant *participant's parent*, guardian, or caretaker," prior to "or in conjunction with the initial distribution of food instruments." *Id.* § 10.54.01.18.C (emphasis added). Further, it states: "[A] participant or the

---

[6] Prudential standing is, however, "subject to exceptions, the most prominent of which is that Congress may remove it by statute," either "expressly or by clear implication." *Warth*, 422 U.S. at 509-10. Indeed, "Congress may, by statute, empower one party to bring suit because of harm *it* suffers due to unlawful discrimination against another party." *A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356, 363 (4th Cir. 2008). Thus, "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." *Warth*, 422 U.S. at 501.

participant's proxy[7] shall report to a designated site at designated times to receive food instruments prepared for that participant and to acknowledge receipt of the instruments." *Id.* § 10.54.01.18.C(2).

COMAR 10.54.01.18.D details the process for "obtain[ing] WIC-authorized foods." A "participant or proxy" presents the WIC identification folder and food instrument "to a WIC-authorized vendor" "within the valid dates printed on the instrument," and then the "participant or proxy" signs the instrument in the WIC vendor's presence. A "food instrument," as defined in COMAR 10.54.01.04.B(16), is "a voucher, check, coupon, or other document that is used by a participant to obtain supplemental foods."

While COMAR does not explicitly state that a participant's "parent" necessarily includes a participating child's father, that can be the only plain meaning of the word "parent." Obviously, a mother and a father are both parents. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1641 (Philip Babcock Gove ed. 1981) (defining "parent" as "**1 a :** one that begets or brings forth offspring: FATHER, MOTHER"). Moreover, COMAR 10.54.01.04.B(3) defines a "caretaker" under the WIC subtitle as "an individual who is responsible for the care and welfare of a participant." To be sure, mothers do not always serve as the ones caring for children; a father or another individual may qualify as the caretaker of a child. Thus, the WIC program, aimed at helping children, does not limit benefits to children who are cared for by their mothers.

On the facts as alleged, Mr. Garris was not ineligible, as a matter of law, from redeeming the WIC voucher. Indeed, Martin's does not dispute the WIC-eligibility of Mr. and Ms. Garris's son, the fact that Martin's is a WIC-authorized vendor, or Mr. Garris's status as parent or

---

[7] COMAR 10.54.01.18.B(1) provides for the designation of proxies in the event that "a participant or a child or infant *participant's parent*, guardian, or caretaker is unable to pick up or redeem WIC vouchers"; once designated, a proxy may "pick up vouchers, redeem them, or both." (Emphasis added.)

caretaker of his son. Accordingly, Martin's Motion to Dismiss will be denied.[8]

## II. Motion to Amend

Mr. Garris filed a Motion to Amend Complaint on April 19, 2011, eleven days after Martin's filed both a Motion to Dismiss and an Answer. Seeking to substitute his wife as the plaintiff, Mr. Garris asserts:

> 1. That the Plaintiff in this case should be the mother, Debra K. Garris, wife of the plaintiff.
>
> 2. The current plaintiff, John J. Garris, incorrectly titled the caption under the complaint under his name and just recently learned that he himself is not the primary recipient of the WIC Program, although he is an authorized user of the WIC vouchers for his son.
>
> 3. Defendant's Motion To Dismiss regarding number one in their ANSWER is correct regarding the Women, Infants and Children (hereinafter "WIC") program legislation 42 U.S.C. subsection 1786 does provide the basis for litigation filed by Debra K. Garris and not John J. Garris, the husband.
>
> 4. Plaintiff, Debra K. Garris was told by store employees and a store supervisor that she and I could not purchase items that had been approved by the WIC program.
>
> 5. Plaintiff, Debra K. Garris can and will present facts that show her and her husband was [sic] denied access to purchase authorized WIC food items.
>
> **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, John J. Garris, respectfully request (sic) that the title of the original complaint be captioned, Debra K. Garris as the plaintiff in the above-captioned matter.

In its Opposition, Martin's urges the Court to deny the motion, because Mr. Garris is not an attorney, and Mr. Garris's request on behalf of his wife constitutes the unauthorized practice of law. In addition, Martin's avers that the *in forma pauperis* application (ECF 2) has been granted only as to Mr. Garris, and not his wife. (ECF 3).

The Court agrees with Martin's, for the reasons it has presented. *See* Local Rule 101.1.a ("Individuals who are parties in civil cases may only represent themselves. . . . All parties other

---

[8] In denying the Motion on the ground asserted – standing – the Court expresses no opinion as to the merits of the discrimination claim.

than individuals must be represented by counsel."); *see also Am. Ass'n of Blood Banks v. Boston Paternity, LLC*, No. 08-2046, 2009 U.S. Dist LEXIS 97817, at *5-6 (D. Md. Oct. 16, 2009) (where defendant attempted to proceed *pro se* on behalf of himself and others, including his son, the court determined that, "because he was not an attorney, he could only represent himself"). Therefore, Mr. Garris's Motion to Amend Complaint will be denied.

An Order consistent with this Opinion will follow.

Date: June 3, 2001

/s/
Ellen Lipton Hollander
United States District Judge